UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRENDA J. CLARK,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-252

Bowman, M.J.

**MEMORANDUM ORDER AND OPINION**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review, asserting that the ALJ failed to adequately consider her lupus and vasculitis. For the reasons explained below, the Court affirms the Commissioner's non-disability determination, which is supported by substantial evidence in the record as a whole.[1]

**I. Summary of Administrative Record**

The record reflects that Plaintiff has filed at least one prior unsuccessful application for Disability Insurance Benefits ("DIB"). This judicial appeal seeks reversal of the Commissioner's denial of her November 2016 application, which alleged the onset of disability beginning on September 15, 2015[2] due to a combination of fibromyalgia, lupus,

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).
[2] Plaintiff's current disability onset date is tied to the day after the ALJ's prior adverse determination, in recognition that the prior decision is administratively res judicata for any period before September 15, 2015. (*See* ALJ's 2015 decision at Tr. 99-108).

1

vasculitis, loss of eyesight left eye, retinal detachment, depression, degenerative disc disease, anxiety, migraines, rheumatoid arthritis, plantar fasciitis, and right foot spur. (Tr. 251-252, 255). After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On October 18, 2018, Plaintiff appeared with counsel in Cincinnati, Ohio and gave testimony before ALJ Peter Boylan. A vocational expert also testified. (Tr. 1091-1128).[3]

Plaintiff was 46 years old at the time of the ALJ's decision, which is defined as a "younger individual." She lives in a single family home with her husband, and has a high school degree. She has past relevant work as a Nurse Aide, a Collator Operator, a Wire Harness Assembler, and Assembler. However, Plaintiff has not worked since her alleged onset date of September 15, 2015 and there is no dispute that Plaintiff cannot perform any of her past relevant work. Plaintiff is insured, for purposes of DIB[4], only through December 31, 2015. She must establish that she became disabled prior to the expiration of her insured status, commonly referred to as her "date last insured" ("DLI").

On January 28, 2019, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 37-47). The ALJ determined that Plaintiff has severe impairments of: "osteoarthritis, blindness in the left eye, spine disorder, fibromyalgia, depression, and anxiety." (Tr. 40). Although Plaintiff also alleged carpal tunnel syndrome, irritable bowel syndrome, migraines, and a bone spur of the left big toe, the ALJ concluded that none of those impairments were severe. (Tr. 40). With respect to Plaintiff's additional allegations concerning the conditions of lupus, vasculitis, rheumatoid arthritis and plantar

---

[3] Initially, the oral hearing transcript dated August 18, 2015 was mistakenly filed in place of the October 18, 2018 transcript. (*See* Doc. 10, Tr. 60-93). The Commissioner corrected the error by filing a Supplemental Administrative Transcript. (Doc. 11, Tr. 1091-1128).
[4] Plaintiff did not apply for Supplement Security Income ("SSI").

2

fasciitis, the ALJ found that "medical records do not support finding these were medically determinable impairments *prior to the date last insured*." (Tr. 41, emphasis added).

After ascertaining which impairments were severe, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that she would be entitled to a presumption of disability. (*Id*.) Plaintiff does not challenge the ALJ's Listing level determination.

Next, the ALJ determined that notwithstanding her impairments, Plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work, subject to the following additional limitations:

> The claimant is limited to occasional operation of foot controls with the bilateral lower extremities. The claimant is limited to occasional climbing of ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She is limited to frequent reaching, handling, fingering, and feeling with the bilateral upper extremities. The claimant has no vision in the left eye, with limited depth perception, but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. The claimant must avoid concentrated exposure to extreme cold, wetness, and humidity. She must avoid all exposure to workplace hazards, such as dangerous machinery and unprotected heights, and cannot perform commercial driving. The claimant is limited to simple, routine tasks, and is not able to perform fast-paced production requirements. She is limited to simple work-related decisions. She is limited to occasional interaction with coworkers. The claimant can have no contact with the general public. She is limited to tolerating occasional changes in a routine work setting.

(Tr. 43). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy, including the representative occupations of General Office Clerk, Inspector/Tester/Sorter, and Production Work Helper. (Tr. 47). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals

3

Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted). In *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), the Supreme Court recently confirmed that while the standard requires some quantum that is "more than a mere scintilla," "the threshold for such evidentiary sufficiency is not high." (internal quotation and citation omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claim of Error**

Plaintiff's Statement of Errors sets forth a single claim: "The ALJ's Step 2 determination is not supported by substantial evidence because he failed to properly consider the severity of Plaintiff's lupus and vasculitis." (Doc. 12 at 4). I find no error.

Whenever an ALJ determines that one or more impairments is severe and considers all of a claimant's impairments in the remaining steps of the disability determination, an alleged failure to find additional severe impairments at Step 2 generally will not amount to reversible error. *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ determined that Plaintiff has multiple "severe" impairments at Step 2, and appropriately proceeded through the sequential analysis based upon that determination. In fact, that ALJ specifically acknowledged that he was required to "consider all of the claimant's impairments, including impairments that are not severe" in determining Plaintiff's ability to perform other work. (Tr. 39). In the absence of contrary evidence, this Court assumes that the ALJ complied with the regulatory framework that he expressly acknowledged.

No evidence of deviation from the law is apparent from the ALJ's opinion, which is substantially supported by the record as a whole. It is undisputed that Plaintiff was not evaluated for, nor diagnosed with, lupus or vasculitis prior to her DLI. In his Step 2 evaluation of lupus and vasculitis in particular, the ALJ accurately stated that Plaintiff sought "*evaluation for* rheumatoid arthritis, vasculitis, and lupus" in 2016, after her DLI. (Tr. 41). The ALJ then reviewed the medical records and testimony relevant to lupus and vasculitis as follows:

> The claimant alleged that she had skin rashes in prior summers (B3F/3, B4F/2). However, other than the claimant's subjective report that she had skin rashes for up to five years prior, the only complaint of a rash during the relevant period was the result of an allergic reaction to a steroid injection

6

>that lasted hours (B23F/35). Otherwise, no rash was noted during multiple examinations during the relevant period, including prior to the date last insured (BF/10, 11 12, B13F/6, 9, *for example*). She reported the rash to her doctor in June 2016 and stated she believe[d] it was due to sun exposure or an allergic reaction (B23F/31). Lupus was mentioned as a possible diagnosis in July 2016 (B10F/9). Furthermore, in September 2016 she reported the rash had been present for five months (B6F/6) and had recently worsened in July 2016 (B3F/4, B4F/2). A punch biopsy was performed in September 2016 and produced results consistent with leukocytoclastic vasculitis (B6F/8). While rheumatoid arthritis is mentioned in the claimant's past medical history in the record, there is no record of the diagnosis.
>
>As previously stated, the claimant's insured status …expired on December 31, 2015. Because the claimant must establish disability prior to the expiration of her insured status, she must demonstrate that she was disabled on or before that date. Evidence of new developments in a claimant's impairments after the expiration of insured status is generally not relevant. The evidence may only be examined when it establishes that the impairments existed continuously and in the same degree from the date the claimant's insured status terminated. The undersigned has determined that the vasculitis, lupus, and rheumatoid arthritis were not medically determinable impairment[s] during the relevant time period.

(*Id*.)

Plaintiff bears the burden of showing that she became disabled prior to her DLI. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (additional citation omitted). In this case, Plaintiff was required to show that her vasculitis and lupus became disabling during a fairly short window of time – the three and a half month period between her alleged onset of disability (September 15, 2015) and her DLI (December 31, 2015). To support her contention that the ALJ committed reversible error in finding that Plaintiff did not establish that lupus and/or vasculitis became disabling during that time period, Plaintiff relies upon two post-DLI treatment notes in which she told her doctors that she recalled suffering from an annual rash that she now attributes to lupus and./or vasculitis. Plaintiff argues that if the physician who was treating her fibromyalgia during the relevant period, Dr. Foad, had paid more attention, her lupus and vasculitis might have been diagnosed

7

much earlier, and thus would have been diagnosed during the relevant disability window.[5] However, both of the 2016 notes on which Plaintiff relies were discussed by the ALJ, (Tr. 41), and neither demonstrates the existence of disabling symptoms from lupus and/or vasculitis prior to her DLI.

The first record, dated August 15, 2016, reflects that Plaintiff sought medical attention for a particularly bad summer rash that year, eight months after her DLI. Although Plaintiff reported a history of summer rash, she also reported that "her skin rash has been definitely worse this past summer," suggesting the rash had been less severe prior to her DLI. (Tr. 413). Consistent with that interpretation, the examining physician noted that "this rash has been present for approximately 5 years but worse recently." (Tr. 414). Plaintiff was referred for a skin test for lupus. (Tr. 41, 550).

The second record, dated September 23, 2016, reflects Plaintiff's examination for a then-current case of hives that the examining physician described as "improving." (Tr. 417). At that appointment, Plaintiff also reported a history of a "facial, chest and arm rash" the previous 5 summers that worsened every July. (*Id.*) However, the examining physician noted "no residual scarring or ecchymosis," suggesting that past rashes had fully "resolve[d]." (*Id.*) A September 2016 biopsy that was "consistent with" lupus was attributed to a rash that Plaintiff reported had "been present for five months," meaning it began post-DLI. (Tr. 482). Similar to other 2016 records, Plaintiff reported that the rash had only "recently worsened." (Tr. 41, 414, 417, 482).

---

[5]Although Plaintiff faults Dr. Foad for failing to test for lupus, the record includes a reference to prior testing. In the August 15, 2016 note, Plaintiff reported that she had "developed a photosensitive skin rash… approximately 5 years ago at which time a test for 'lupus' was reportedly negative." (Tr. 413).

8

Both of the clinical notes on which Plaintiff relies post-date her DLI by many months, and report a historical summer rash that was not severe enough when it occurred to seek medical attention. Based upon her statement that her rash occurred every "July," the 2015 occurrence would have pre-dated her September 15, 2015 alleged onset of disability. On the other hand, the 2016 rash that prompted her to seek medical care clearly post-dated her DLI. As discussed by the ALJ, there are no records documenting any rash in 2015 besides a December 14, 2015 complaint of an apparently brief allergic reaction to a then-recent steroid injection in her shoulder. (Tr. 41, 783). In fact, medical records expressly state "[n]o rash" on exam or that Plaintiff "[d]enies rash" during exams conducted in September 2015, October 2015, November 2015, and December 2015. (*See* Tr. 442, 443, 444; *see also* Tr. 587-88, 590-91). Given that Plaintiff sought no medical attention for rash during the relevant period, and further that the historically reported "July" rash pre-dated Plaintiff's disability onset date, the ALJ's determination that the referenced clinical notes are insufficient to demonstrate that Plaintiff's lupus and vasculitis were medically determinable and/or *disabling* impairments during the disability period is extremely well-supported.

In addition to the two clinical notes, Plaintiff emphasizes other records that pre or post-date the relevant three and a half month period during which she was required to establish her disability, including hearing testimony from an earlier application. (*See*, *e.g.*, Doc 12 at 10-11). To the extent Plaintiff's prior testimony is relevant, it does not take away from the ALJ's well supported analysis or support her current claim. Unsurprisingly, Plaintiff did not allege either vasculitis or lupus in her prior application, which concerned an alleged disability from July 24, 2011 through September 14, 2015. (Tr. 65). More notably, she did not testify about any symptoms of rash at the August 18, 2015 hearing,

9

just four weeks before her currently alleged onset of disability. (*See* Tr. 68). Likewise, the post-DLI records that support her eventual 2016 lupus diagnosis do not support the onset of disability in 2015, in the absence of evidence that Plaintiff experienced severe symptoms from lupus or vasculitis during that earlier time period. *See Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981) ("Evidence of new developments … subsequent to the expiration of [a plaintiff's] insured status would not be relevant.").

Curiously, at the hearing held on October 18, 2018 on Plaintiff's current application, when the ALJ asked, "what prevented you from working" during the relevant 2015 time period, Plaintiff did not list vasculitis or lupus or reference a rash. (Tr. 1099-1100, responding by listing fibromyalgia, osteoarthritis, anxiety and depression). Only after questioning by counsel did Plaintiff testify that in the years leading up to her 2016 diagnosis of lupus and vasculitis, she was experiencing itchy rashes even though her treating physician, Dr. Foad, noted "[n]o rash" on exam. (*Id.*) When asked about that discrepancy, Plaintiff had little to say, other than expressing a belief that Dr. Foad had "failed me as a doctor" because he "never took it seriously" and should have done more testing.[6] (Tr. 1110-1111).

Based on the lack of objective records documenting a rash during the relevant 2015 period, Plaintiff's reported rash history is viewed as a subjectively reported complaint. Relevant to such retrospectively reported symptoms, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision and are given little weight." (Tr.

---

[6]Plaintiff's complaint about Dr. Foad does not explain her express denial of rash at appointments with a different provider in September and November 2015. (*See* Tr. 587-588, 590-91).

44).  Plaintiff does not directly challenge that evaluation in this appeal.  However, even if the ALJ had accepted Plaintiff's historical report of rash, her testimony still failed to establish that she became disabled between September 15 and December 31, 2015.

During the hearing, her attorney focused on any rash symptoms she might have experienced in 2015, when she had been diagnosed with fibromyalgia but not yet lupus.  But Plaintiff's testimony provides no support for her disability claim:

> Q. …[A]re you able to tell the difference between how you feel with this lupus condition and vasculitis versus fibromyalgia?  In terms of symptoms and the impact are you able to tell the difference?
>
> A.  Well, a lot of it's the same symptoms, all but the - - because you have the achiness, the muscles [sic] aches, the joint swelling.  *The rash, I never got a rash with the fibro, but the rash with the lupus and the vasculitis is - - that's just hideous looking.  It's just like huge hives all over your body.*
>
> Q. How often does that happen?  That's different than the lupus?
>
> A. Lupus rash.
>
> Q. Right.
>
> A. Yes.

(Tr. 1112, emphasis added).

Plaintiff went on to stress that her hives from lupus and vasculitis were the worst part of her skin condition.  However, she clearly testified that her hives did not begin until <u>after</u> she was diagnosed with lupus and prescribed a new lupus medication, which was <u>after</u> her DLI.  (Tr. 1112-1113).  When queried about the extent of her symptoms prior to December 31, 2015, Plaintiff alluded to pain from her fibromyalgia that she suspected may have been increased by the then-undiagnosed lupus, but she did not refer to rash:

A.   Oh, just with the fibro?

Q. Yeah.

A  Well, the lupus played effect, but I didn't know.

11

> * * *
> A So why I would get sick and no one understands. You just get very nervous and in pain when you just can't explain to them because they don't understand.

(Tr. 1115). Considering that lupus and vasculitis were not diagnostically considered until 2016, Plaintiff's testimony that she "never got a rash with the fibro," and only experienced "hives" with lupus and vasculitis, drives home the conclusion that neither lupus nor vasculitis were medically determinable prior to her DLI.

Last, although Plaintiff's claim is limited to a Step 2 error, she briefly argues that the ALJ should have found that she would be "off task 20 percent of the workday or would miss two days of work per month." (Doc. 12 at 20). However, Plaintiff points to no evidence of record that she suffered from those limitations. Therefore, the Court finds that RFC to be substantially supported.

"Discretion is vested in the ALJ to weigh all the evidence," and the ALJ here did not abuse that discretion. *Collins v. Com'r of Soc. Sec.*, 357 Fed. Appx. 663, 668 (6th Cir. 2009) (internal quotation marks and citation omitted). If the hypothetical RFC formulated by an ALJ is supported by the record, a vocational expert's testimony that an individual can engage in a substantial number of jobs will constitute substantial evidence to support the non-disability determination. *Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

### III.  Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

>  */s Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge